UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DEVONNE WASHINGTON,**   )   )   **Plaintiff,**   )   )   v.   )   )   **INTERNATIONAL FOLLIES,**   )   **INC. d/b/a Cheetah and JACK**   )   **BRAGLIA,**   )   )   **Defendants.**   ) | **CIVIL ACTION FILE NO. _____** |

## COMPLAINT

COMES NOW, DEVONNE WASHINGTON and files her Complaint against INTERNATIONAL FOLLIES, INC. d/b/a Cheetah and JACK BRAGLIA and shows:

## INTRODUCTION

1. Plaintiff was an employee of INTERNATIONAL FOLLIES, INC. ("Cheetah").

2. Cheetah operates an adult entertainment club in Atlanta, Fulton County, Georgia known as the "Cheetah."

3. JACK BRAGLIA ("Braglia") is the general manager of Cheetah and part owner of Cheetah.

4. Cheetah failed to pay Plaintiff the minimum wage and overtime

wage for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA").

5. Defendants also violated the Tip Income Protection Act, 29 U.S.C. § 203 ("TIPA"), by unlawfully seizing a portion of Plaintiff's tips.

6. As a result of Defendants' violation of the FLSA, Plaintiff seeks to recover all unpaid minimum and overtime wages, unlawful deductions required to be paid from Plaintiff's wages, all tips kept by the employer, any tip credit claimed by Defendants, liquidated damages, interest, and attorneys' fees and costs pursuant to the FLSA and TIPA.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201 *et seq.*

8. Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiff worked in this District.

## PARTIES

9. Plaintiff was employed by Cheetah from on or about April 2, 2012 until on or about November 1, 2016. Plaintiff qualified as an

"employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1).

10. Cheetah is a Georgia Corporation with its principal place of business located at 887 Spring Street, NW, Atlanta, Fulton County, Georgia 30308. At all times mentioned herein, Cheetah was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), (g). Defendant International Follies, Inc. d/b/a Cheetah may be served by serving its registered agent, William M. Hagood at 887 Spring Street NW, Atlanta, Fulton County, Georgia, 30308.

11. Defendant Jack Braglia ("Braglia") is the General Manager of the Cheetah and a resident of Fulton County, Georgia. Braglia acted directly or indirectly on behalf of Cheetah, and, at all times mentioned herein was an "employer" or joint employer of Plaintiff within the meaning of the FLSA. Defendant Braglia may be served at 887 Spring Street, NW, Atlanta, Fulton County, Georgia 30308.

## FACTUAL ALLEGATIONS

12. Cheetah employed Plaintiff as an entertainer.

13. The primary duty of a cheetah entertainer is "to dance and entertain customers, give them a good experience."

14. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis.

15. Stated differently, entertainers "danc[e] on stage, perfor[m] table dances, and entertai[n] customers in Cheetah's VIP rooms, all while nude or semi-nude."

16. Plaintiff typically worked at least three (3) eight (8) hour shifts per week without being paid any wages by Defendants.

17. Plaintiff worked over forty (40) hours in some weeks she worked for Defendants without being paid any wages.

18. Cheetah paid Plaintiff the sum of $2.13 per hour for all time on the Clock and used the tip credit provisions of the FLSA to satisfy Cheetah's remaining wage obligations under the FLSA.

19. Cheetah used the tip credit provisions of the FLSA to make up the difference between the hourly wage of $2.13 and the minimum wage of $7.25 an hour.

20. Cheetah tightly regulated entertainer appearance while on duty, including the costumes, footwear, makeup, hair, nails and accessories used by an entertainer.

21. Each entertainer was "required to wear makeup, to have [their] nails painted, and to have [their] hair done, all according to standards communicated to [them] by Cheetah management and/or house moms."

22.     If an entertainer failed to comply with the dress and appearance requirements, she was required to either correct the problem, or was not allowed to perform.

23.     In order to comply with Cheetah's strict dress and appearance standards, Plaintiff typically expended at least one (1) hour of time each shift getting ready for work without being paid any wages for such time getting ready.

24.     The time Plaintiff spent getting ready for work constitutes hours worked within the meaning of the FLSA.

25.     Cheetah requires its entertainers to go through a check-out process at the end of each shift, during which the entertainer is required to make certain payments to the floor men, floor manager, house moms and DJ.

26.     The check out process included a breathalyzer test and required the entertainer to wait in line to make the required payments.

27.     The check out process normally took 15 – 20 minutes each shift.

28.     Cheetah failed to compensate its entertainers for the time spent complying with Cheetah's mandatory check out process.

29. At the end of each night shift, Plaintiff was required to wait at Cheetah until the premises and the parking lot were cleared of customers before she was allowed to leave work without being paid wages for such waiting time.

30. Plaintiff typically waited between 15 minutes and 1 hour each shift without pay waiting for Cheetah's customers to leave the premises and parking lot.

31. Cheetah never paid Plaintiff any wages or compensation for any hour in any workweek in which she got ready for work or was required to wait on the premises.

32. Cheetah's failure to compensate Plaintiff for the time getting ready for work and complying with Cheetah's check out and waiting policies caused her wages to drop below the minimum wage for each workweek she worked for Cheetah.

33. Cheetah did not pay Plaintiff one-and-a-half times her regular rate of pay when Plaintiffs worked over forty hours in a given workweek.

34. Plaintiff was not covered by any minimum or overtime wage exemption contained in the FLSA.

35. Cheetah knew that their entertainers were not being compensated for time incurred getting ready for work and going through the mandatory check out process and waiting at the end of each shift.

36. Cheetah maintains a policy, practice and custom of requiring its entertainers to find and pay for another dancer to "cover" for her if she did not receive permission to miss work or could not make it to work on a scheduled shift.

37. The cover charge minimum was typically $40 per shift and the average night shift charge for a cover was $80 per shift.

38. Every time an entertainer was required to pay a cover in a workweek, her wages dropped below the minimum wage for that workweek, and the overtime wage in those workweeks in which overtime wages were applicable.

39. Plaintiff paid covers which dropped her wages below the minimum wage and applicable overtime rate.

40. Cheetah knew that its entertainers, including Plaintiff, were paying covers when they were unable to work on their scheduled shift.

41. Cheetah required each entertainer to contribute ten percent (10%) of their earnings to a tip pool.

42. The tip pool was divided amongst the house moms, floor men, night manager and disc jockey each shift.

43. Because a portion of the tip pool was shared with management and Cheetah's supervisors, the tip pool is invalid under the FLSA and TIPA.

44. Because the tip pool is invalid, Cheetah is not entitled to a tip credit for the difference between the hourly wage of $2.13 and the minimum wage of $7.25 per hour.

45. The cover charges, unpaid time spent getting ready for work, going through the check-out process, time spent waiting after work and invalid tip pool caused Plaintiff's wages to drop below the minimum wage.

46. Cheetah's entertainers were not covered by any exemption under the FLSA.

47. Cheetah maintained inaccurate records of wages, fines, fees, tips and gratuities and/or service charges paid or received by entertainers.

48. Cheetah did not declare any service charge income on its entertainers W-2 forms.

49. Cheetah maintains incomplete records of time worked by each entertainer.

50. Cheetah's failure to maintain records of the time worked and amounts paid as fines, tips, gratuities and service charges violated the record

keeping requirements of 29 CFR Part 516.

51. Defendants knew, or showed reckless disregard for the fact that there compensation policies violated the FLSA.

## COUNT I
## MINIMUM WAGE CLAIM (Claims for Violation of 29 U.S.C. § 206)

52. Each Defendant is an "employer" or joint employer of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

53. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

54. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than $500,000.

55. Defendants failed to pay Plaintiff the minimum wage in violation of 29 U.S.C. § 206.

56. Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff the minimum wage under the FLSA.

57. Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good

faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

58. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## OVERTIME WAGE CLAIM (Violation of 29 U.S.C. § 207)

59. Each Defendant is an "employer" or joint employer of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

60. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

61. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than $500,000.

62. Defendants failed to pay Plaintiff the applicable overtime wage

for each hour in excess of forty (40) during each workweek in which she worked in violation of 29 U.S.C. § 207.

63. Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff the overtime wage required under the FLSA.

64. Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

65. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

### COUNT III
### UNLAWFUL TAKING OF TIPS (Violation of 29 U.S.C. § 203)

66. Plaintiff repeats and realleges the allegations in the preceding paragraphs of this Complaint, and incorporate the same herein by this specific reference.

67. Each Defendant is an "employer" or joint employer of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

68. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

69. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than $500,000.

70. Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

71. Defendants kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, DJ and floormen in violation of TIPA.

72. As a result of Defendants willful violation of TIPA, Plaintiff is entitled to recover, under the FLSA and TIPA, all tips kept by the employer,

any tip credit claimed by Defendants, an equal amount in liquidated damages and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court grant relief as follows:

    a.    As to Count I award Plaintiff judgment for wages at the minimum rate, including the recovery of all payments reducing wages below the minimum wage, as well as liquidated damages, interest and attorneys' fees as provided for under the FLSA;

    b.    As to Count II award Plaintiff judgment for overtime wages, including the recovery of all payments reducing wages below the overtime wage, as well as liquidated damages in an equal amount, interest and attorneys' fees as provided for under the FLSA;

    c.    As to Count III award Plaintiff judgment for the recovery of all tips kept by the employer, the amount of any tip credit claimed by Defendants, an equal amount in liquidated damages and reasonable attorneys; fees under the FLSA and TIPA;

    d.    Award Plaintiff the costs of this action, including expert fees;

e. Grant Plaintiff a jury trial on all issues so triable; and

f. Award Plaintiff such other and further relief as the Court may deem just and proper.

This 20th day of August, 2018.

**DUDLEY LAW, LLC**

*/s/ Ainsworth G. Dudley*
Ainsworth G. Dudley
Ga. Bar No. 231745
Attorney for Plaintiffs

4200 Northside Parkway
Bldg. 1, Suite 200
Atlanta, GA  30327
Tel.: 404.687.8205
Fax: 404.237.2150
adudleylaw@gmail.com

**FLYNN LAW FIRM, LLC**

/s/ Jonah A. Flynn
Jonah A. Flynn
Georgia Bar No. 266555
*Counsel for Plaintiffs*

4200 Northside Parkway NE
Building One, Suite 200
Atlanta, GA 30327
Phone: 404-835-9660
Fax: 404-835-6005
e-mail: jflynn@flynnfirm.com

## JURY DEMAND

Pursuant to F.R.C.P 38, Demand is hereby made for trial by jury on all issues raised by these pleadings.

*/s/ Ainsworth G. Dudley*

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing has been prepared using Times New Roman 14 point font.

This 20th day of August, 2018.

>  */s/ Ainsworth G. Dudley*
> Ainsworth G. Dudley
> (Georgia Bar No. 231745)
> Attorney for Plaintiffs