IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DEVONNE WASHINGTON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:18-CV-03951-ELR |
| | * | |
| INTERNATIONAL FOLLIES, INC. | * | |
| d/b/a Cheetah and JACK BRAGLIA, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**O R D E R**

Presently before the Court is Defendants' Motion for Summary Judgment. [Doc. 24]. The Court's rulings and conclusions are set out below.

**I.   Background**

This case involves Plaintiff Devonne Washington's claims against International Follies, Inc. d/b/a Cheetah ("The Cheetah") and Jack Braglia for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Am. Compl. [Doc. 9]. Defendants operate an "upscale entertainment club" located in Atlanta, Georgia, known as The Cheetah. Defs.' Statement of Material Facts ¶ 1 [Doc. 24-1] ("Defs.' SOMF"). Defendant Braglia is, and was at the time of Plaintiff's employment, the general manager of The Cheetah. Id. ¶ 23. Plaintiff

formerly worked at The Cheetah as an entertainer from June 27, 2016, through May 10, 2017. Id. ¶¶ 3, 44.

The Cheetah pays its female entertainers the minimum wage of $7.25 per hour by paying a cash wage of $2.13 per hour and applying a tip credit of $5.12 per hour. Id. ¶ 4. According to Defendants' written tip policy, Plaintiff and other dancers would only have to contribute 10% of their total tips to floor managers and disc jockeys as part of a tip-pooling arrangement. Id. ¶ 9. Defendants contend that this was the only mandatory tipping required by The Cheetah. Id.

However, Plaintiff disputes Defendants' characterization of The Cheetah's tip policy and claims that she was required to participate in an unlawful tip pool. Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 9 [Doc. 26-4] ("Pl.'s Resp. to Defs.' SOMF"). She asserts that in addition to the 10% she gave to floor managers and disc jockeys—as mandated by the written policy—she participated in other unwritten mandatory tipping. Pl.'s Statement of Material Facts ¶¶ 26–28 [Doc. 26-3] (Pl.'s SOMF"). Plaintiff contends she had to tip "house moms" $10.00 at the end of each shift, give 20% of any monies earned from a VIP dance session with a customer referred to her by a floor manager to said floor manager, and pay money to have to another entertainer "cover" her shift when she required substitution. Id.

Plaintiff also maintains that in order to comply with Defendants' strict dress policy, she typically spent an hour getting ready for work—time for which she did

not receive compensation. Id. ¶ 30. In addition to the dress policy, all dancers were subject to The Cheetah's "waiting policy," which required entertainers to engage in check-out procedures and wait until all customers had departed the premises before they were permitted to leave. Id. ¶ 33. Plaintiff asserts that she typically waited between thirty (30) minutes to one (1) hour every time her shift ended—time for which she was not compensated. Id. Accordingly, Plaintiff accuses Defendants of violating the FLSA by failing to pay minimum wage, failing to pay overtime wages, and by requiring Plaintiff to participate in an unlawful tip pool. Id. ¶¶ 4–6, 8–14, 30–33.

Defendants deny any wrongdoing, stressing that Plaintiff's minimum wage and overtime wage claims are not recoverable because she is seeking compensation for non-compensable preliminary and postliminary activities. [Doc. 24 at 9–17]. Furthermore, Defendants argue that The Cheetah's tip credit policy is valid. [Id. at 17–23]. Defendants emphasize that they had reasonable grounds for believing The Cheetah's tip credit policy complied with the FLSA because they had relied on the advice of their previous counsel, Ford & Harrison, before implementing the policy. [Id. at 24–25]. Thus, Defendants move for summary judgment on all of Plaintiff's claims. [Id.] Having been fully briefed, Defendants' motion is now ripe for the Court's review.

3

## II. Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome pursuant to the governing law. Id. The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249.

When ruling on a motion for summary judgment, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. Id. at 324–26. The essential question is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

### III. Discussion

Defendants argue that based on undisputed facts: (1) Plaintiff cannot recover overtime wages for any preliminary and postliminary time, (2) Plaintiff cannot prevail on her claim for alleged violations of the FLSA's tip credit provisions, and (3) even if Defendants violated the FLSA's tip credit provisions, they are entitled to a good faith defense. [Doc. 24]. As such, they contend that they are entitled to summary judgment. [Id.] The Court discusses each of Defendants' contentions below.

#### A. Plaintiff's Overtime Claim Regarding Her Pre-shift and Post-shift Activities

First, the Court turns to Plaintiff's overtime wage claim regarding her pre-shift and post-shift activities. Plaintiff argues that because she was uncompensated for the time she spent preparing for work and the spent waiting after work, Defendants failed to pay her the appropriate overtime wages. Pl.'s SOMF ¶¶ 29–34. Defendants disagree, contending that Plaintiff cannot be compensated for the time she spent before work "getting ready" for her shift because it is preliminary work that is not covered under the FLSA. [Doc. 24 at 9–16]. Similarly, Defendants claim that they are not required to compensate Plaintiff for any postliminary activities—

5

thus, Plaintiff cannot recover for the time spent on engaging in check-out procedures after work and waiting for customers to leave. [Id. at 16–17].

### a. FLSA: Preliminary and Postliminary Activities

Under the FLSA, an employer must compensate an employee who performs overtime work—work in excess of forty hours per week—in an amount of one and one-half times his regular rate. Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). However, pursuant to the Portal-to-Portal Act of 1947, employers are exempt from liability for failure to compensates employees for:

> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time of any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). Here, the term "principal activity or activities" includes "all activities that are an 'integral and indispensable part of the principal activities.'" Llorca v. Sheriff, Collier Cty., 893 F.3d 1319, 1323 (11th Cir. 2018) (quoting Steiner v. Mitchell, 350 U.S. 247, 256, (1956)). Thus, "preliminary and postliminary activities are compensable only if they are *both* an integral *and* indispensable part of the principal activities." Id. at 1324 (emphasis in original) (internal citations omitted).

6

To determine which activities are integral and indispensable, the Eleventh Circuit has explained that "indispensable is not synonymous with integral." Id. at 1323 (internal marks and citation omitted). "The fact that certain preshift activities are *necessary* for employees to engage in their principal activities does not mean that those preshift activities are '*integral and indispensable*' to a principal activity . . . ." Bonilla v. Baker Concrete Constr., Inc., 487 F.3d 1340, 1344 (11th Cir. 2007) (emphasis added) (internal marks and citation omitted). Therefore, "[a]n activity is integral and indispensable to an employee's principal activities if the activity is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform the activities." Meeks v. Pasco Cty., 688 F. App'x 714, 717 (11th Cir. 2017) (internal marks and citation omitted).

### b. Analysis

To meet The Cheetah's "strict appearance guidelines," Plaintiff states that she spent hours before work to ensure her appearance was "stage ready." [Doc. 26 at 7]; Decl. of Devonne Washington ¶ 32 [Doc. 26-1] ("Washington Decl."). Because "Cheetah's appearance policy was indispensable to Cheetah's business, and was integral to the work of nude dancing at the Cheetah," Plaintiff contends that she is entitled to compensation for the time she spent on her appearance for each shift. [Doc. 26 at 7]. Additionally, because Defendants required Plaintiff to wait until

7

customers had dispersed from the parking lot before leaving, Plaintiff seeks compensation for that waiting period. [Id. at 8].

Upon review, the Court finds that Plaintiff is not entitled to receive compensation for her pre-shift and post-shift activities. In making this determination, the Court finds the Supreme Court's decision in Integrity Staffing Sols., Inc. v. Busk to be instructive. 574 U.S. 27, 33 (2014). In Integrity Staffing, an employer required its warehouse employees to undergo anti-theft security screening before leaving work each day. Id. at 30. These employees sued their employer arguing that the time they spent waiting to undergo and undergoing these security screenings were compensable under the FLSA. Id.

The Supreme Court disagreed. Id. First, the Court reaffirmed than pursuant to the FLSA, compensable activities include those "activities which are an integral and indispensable part of the principal activities." Id. at 33 (internal marks and citations omitted). Accordingly, "an activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." Id. at 37. Using this framework, the Court determined the mandatory security screenings were not integral and indispensable to the principal work the employees were required to perform—namely retrieving products from warehouse shelves and packaging those

products for shipment—because the employer "could have eliminated the screenings altogether without impairing the employee's ability to complete their work." Id. at 35. Therefore, the time the employees spent during the security screenings were not compensable. Id.

In light of this precedent, the Court finds that the time that Plaintiff spent getting ready for work and the time that she spent waiting for customers to depart the premises were not integral and indispensable to the principal activity that she was employed to perform. Plaintiff was hired to dance and entertain customers, which she could have done with or without a certain appearance. See Llorca, 893 F.3d at 1326 (holding that deputies were not entitled to overtime wages for time spent donning and doffing police gear because those activities were not integral to the deputies' principal activities).[1] Similarly, the Court finds that engaging in check-out procedures and waiting for guests to leave after work was not "an intrinsic element" of dancing or entertaining guests. See Integrity Staffing, 574 U.S. at 39 (Sotomayor, J., concurring) (explaining that 29 U.S.C. § 254(a) "distinguishes between activities that are essentially part of the ingress and egress process, on the

---

[1] Additionally, courts in other districts have held that adult entertainers are not required to be compensated for the time it takes to meet the appearance requirements of their occupation. See Labriola v. Clinton Entm't Mgmt., LLC, No. 15-C-4123, 2017 WL 1150989, at *12 (N.D. Ill. Mar. 28, 2017) ("Plaintiffs' changing clothes and applying makeup are not principal activities."); Thornton v. Crazy Horse, Inc., No. 3:06-CV-00251-TMB, 2012 WL 2175753, at *3 (D. Alaska June 14, 2012).

one hand, and activities that constitute the actual 'work of consequence performed for an employer,' on the other hand"). Because these activities could have been eliminated without impairing an entertainer's ability to complete her work, they were not integral and indispensable to Plaintiff's employment. Id. at 35.

Plaintiff argues that she should be compensated because Defendants *required* her to maintain a certain appearance and *required* her to wait for an undetermined period after every night shift. [See Doc. 26 at 7]. But the Court finds Plaintiff's reliance on her employer's requirements to be misguided. The focus of the integral and indispensable test is on "the productive work that the employee is *employed to perform*," not "on whether an employer *required* a particular activity." Integrity Staffing, 574 U.S. at 36 (emphasis in original) (internal citations omitted). As such, Plaintiff's claim regarding overtime wages for pre-shift and post-shift activities fail. Therefore, Defendants are entitled to summary judgment on this issue.

### B. Defendants' Tip Credit Policy

Next, the Court turns to Plaintiff's minimum wage claim regarding the FLSA's tip credit policy. Plaintiff claims that Defendants required her to participate in forced tip-outs and forced covers, which reduced her wages to below minimum wage. [Doc. 26 at 7–10]]. Further, Plaintiff alleges that two tip policies—a written tip policy and a mandatory unwritten tip policy—were both unlawfully enforced at The Cheetah, in violation of the FLSA. [Id.]

### a. FLSA: Tip Credit

As noted above, the FLSA requires employers to pay employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1). Recognizing that many employees earn income through tips, the "tip credit" provision of the FLSA allows employers to use employees' tips to satisfy the minimum wage requirement, provided that certain conditions are met. 29 U.S.C. § 203(m)(2)(A). The statute states:

> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The [tip credit] shall not apply with respect to any tipped employee unless [1] such employee has been informed by the employer of the provisions of this subsection, and [2] all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Id. In other words, for a tip credit policy to be valid: (1) the employer must give their employee notice of the tip credit policy, and (2) employees must retain all tips received—except where the employer requires the employees to participate in a tip-pool that redistributes a portion of their tips with other employees who "customarily and regularly receive tips." Id. A tip pool is invalid when pooled tips are distributed among non-tipped employees, such as mangers. Id.; see also Miller v. Garibaldi's Inc., No. CV414-007, 2018 WL 1567856, at *4 (S.D. Ga. Mar. 30, 2018).

11

Here, Plaintiff argues that Defendants failed to satisfy the second condition because Plaintiff was forced to participate in a tip pool with management and supervisors. The written tip policy stated:

> You are required to contribute 10% of your total tips to floor managers and disc jockeys (collectively) as part of a tip-pooling arrangement. No other mandatory tipping is required. With the exception of any lawful contributions to a tip pool that you may be required to make, the applicable law requires that you be allowed to retain all of your remaining tips. Management will not retain any of your tips.

Decl. of John Jack Braglia at 12 [Doc. 24-3] ("Braglia Decl."). Although the policy states that "management will not retain any of your tips," Plaintiff contends she was forced to share her tips with Robert ("Bob") Johnson, a floor manager who also served as a night manager. [Doc. 26 at 8–10]. Because Defendants admit that Mr. Johnson participated in the tip pool, Plaintiff argues that the tip pool is unlawful and that she is entitled to liquidated damages. [Id.] Defendants, on the other hand, state that even though Bob Johnson's title was "manager," he was in reality an employee who lacked controlling authority and served primarily as a "bouncer." Braglia Decl. ¶ 19. Thus, his participation in the tip pool was lawful. [Doc. 24 at 18–23].

"The practice of forced sharing of tips with management is an illegal practice, regardless of whether the members of management are also engaged in services that could be the subject of tipping." Wajcman v. Inv. Corp. of Palm Beach, No. 07-80912-CIV, 2008 WL 783741, *3 n.1 (S.D. Fla. Mar. 20, 2008). Thus, "the sharing of tips with managers invalidates the tip credit and requires the employer to pay the

12

full minimum wage." Beaudry v. Emperor's Gentleman's Club, Inc., No. 8:14-CV-02653, 2015 WL 10844157, at *1 (M.D. Fla. Apr. 6, 2015). Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee, which may include managers." Miller, 2018 WL 1567856, at *4 (citing 29 U.S.C. § 203(d)). To determine whether an employee is a manger, courts look at the person's ability to control the terms and conditions of an employee's work along with the person's authority to hire and fire employees. Id.

Upon review, the Court finds that there is a genuine issue of material fact as to the amount of control Bob Johnson, and other floor managers, possessed over Plaintiff. Defendants claim that Mr. Johnson was a floor manager and night manager who exercised no control over the terms of employment; had no power to discipline, hire, or fire employees; and had no control over the payroll. [Doc. 24 at 18] (citing Braglia Decl. ¶¶ 18–23). Additionally, Defendants state that floor managers "had no supervisory or managerial duties or responsibilities." Braglia Decl. ¶ 19. Rather than using the term "bouncer" or "security," Defendants prefer to use the term "floor manager to convey a more sophisticated atmosphere." Id. Thus, according to Defendants, Mr. Johnson and other floor managers are not "employers" or "managers" as defined by the FLSA. [Doc. 28 at 9–13].

However, Plaintiff has presented her own declaration that Bob Johnson supervised employees, and possessed the authority to discipline employees,

13

including the ability to fire them. Washington Decl. ¶¶ 9–19. Plaintiff states that Mr. Johnson's primary role was that of a nightshift manager, she never saw Mr. Johnson receive tips from customers, and she understood that Mr. Johnson received a salary. Id. ¶¶ 14–18. Plaintiff also declares that other floor managers had similar supervisory authority. Id. ¶¶ 18–20. Because the legal determination of whether floor managers are the type of employees who "regularly and customarily receive tips" depends on genuine issues of material fact, summary judgment is inappropriate. See Miller, 2018 WL 1567856, at *4 (denying summary judgment when there was a genuine issue of material fact as to the amount of control "Managers on Duty" exercised over other employees). As a result, the Court denies Defendants' Motion for Summary Judgment with respect to this claim.

**C. Good Faith Defense**

Finally, Defendants contend that if the Court finds that a violation occurred, then they are entitled to the good faith defense. [Doc. 24 at 23]. According to the FLSA, a court can reduce or deny liquidated damages if the employer shows "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. To satisfy the good faith test, "the employer has the burden of proving that it had an honest intention to ascertain what the Act requires and to act in accordance with it." Dybach v. Fla. Dep't of Corr., 942 F.2d 1562,

1566 (11th Cir. 1991) (internal marks and citations omitted). "If the employer fails to prove that he acted with both subjective and objective good faith, liquidated damages are mandatory." Davila v. Menendez, 717 F.3d 1179, 1186 (11th Cir. 2013).

However, determining an employer's good faith is premature when there are genuine factual disputes as to whether a FLSA violation occurred and whether that violation was willful. See Miller, 2018 WL 1567856, at *5 (citing Davila, 717 F.3d at 1186). Willfulness and good faith are mutually exclusive, meaning that a determination that Defendants acted willfully would preclude a finding of good faith. Id. Because factual issues remain as to whether a violation occurred, the Court is currently unable to determine the applicability of Defendants' good faith defense. Thus, Defendants are not entitled to summary judgment with respect to this issue.

**D. Summary**

In sum, Defendants are entitled to summary judgment regarding any overtime claims for pre-shift and post-shift activities. However, genuine issues of material fact remain as to whether Defendants violated the tip credit policy of the FLSA. As such, summary judgment is inappropriate with respect to Plaintiff's minimum wage claim and Defendants' good faith defense. Therefore, the Court grants in part and denies in part Defendants' Motion for Summary Judgment. [Doc. 24].

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment. [Doc. 24]. Specifically, the Court **GRANTS** Defendants' motion with regards to Plaintiff's claim for overtime wages and **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendants on that claim. The Court **DENIES** Defendants' motion with regards to Plaintiff's remaining minimum wage claim. The Court **DIRECTS** the Parties to confer and submit a proposed consolidated pretrial order in accordance with LR 16.4, NDGa., within thirty (30) days from the date of entry of this order.

**SO ORDERED**, this 27th day of February, 2020.

Eleanor L. Ross
United States District Judge
Northern District of Georgia